IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, ) | |
| ) | Case No. 1:21-cr-165 |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| v. ) | MEMORANDUM AND REQUEST |
| ) | FOR DOWNWARD VARIANCE |
| Justin Ladd Spotted Bear, ) | |
| ) | |
| Defendant. ) | |

The Defendant, Justin Ladd Spotted Bear, by and through his attorney, Jackson J. Lofgren, submits this Memorandum in advance of his sentencing hearing scheduled for January 17, 2022.

**1. Offense Level**

Mr. Spotted Bear was charged on September 1, 2021, with a two-count Indictment. On February 2, 2022, a six-count Superseding Indictment was filed. In May 2022 the parties negotiated to resolve this case. The United States offered a plea agreement. The United States was not agreeable to any other resolution or amendments to the plea agreement. Mr. Spotted Bear accepted the plea agreement in good faith.

Under the terms of the plea agreement the parties agreed to a base offense level of **30** under U.S.S.G. §2A3.4(c)(1) and §2A3.1(a)(2). The parties agreed there would be a **4**-level increase based on B.S.'s age under U.S.S.G. §2A3.1(b)(2)(A). The parties further agreed, that by accepting the government's plea offer, Mr. Spotted Bear had accepted responsibility and should receive the **2**-level reduction under U.S.S.G. §3E1.1(a) and **1** level reduction under U.S.S.G. §3E1.1(b). This resulted in an anticipated total offense level of **31**.

The Presentence Investigation Report (PSIR) included the parties' anticipated calculations. However, the PSIR also included a **2**-level enhancement under U.S.S.G. §2A3.1(b)(3)(A) and a **5**-level enhancement under U.S.S.G. §4B1.5(b)(1) that were not included in the plea agreement. Mr. Spotted Bear submitted an objection to the **2**-level enhancement under U.S.S.G. §2A3.1(b)(3)(A) in his objections to the draft PSIR. This enhancement is triggered "[i]f the victim was in the custody, care, or supervisory control of the defendant." U.S.S.G. §2A3.1(b)(3)(A). The commentary to section 2A3.1 cites "teachers, day care providers, baby-sitters, or other temporary caretakers…" as examples of where the enhancement would apply. Mr. Spotted Bear was B.S.'s

step-father. He was not her guardian and was not responsible for providing discipline. The information admitted to by Mr. Spotted Bear is insufficient to establish that at the time of the offense conduct he was in a custodial or supervisory role. While the commentary to section 2A3.1 states the provision is to be construed broadly it should not be interpreted so broadly that it applies to every situation where the defendant has a relationship to the victim. As the parties did not include this enhancement in the plea agreement, and the information admitted to by Mr. Spotted Bear does not establish a factual basis for applying it, Mr. Spotted Bear requests it not be included in the calculation of his offense level.

Similarly, the **5**-level enhancement under U.S.S.G. §4B1.5(b)(1) should not be applied to Mr. Spotted Bear's offense level. The parties did not include this enhancement in the plea agreement. Mr. Spotted Bear objected to this enhancement in his response to the draft PSIR. He pled guilty to a single count of Abusive Sexual Contact. Mr. Spotted Bear objected to the majority of the information now contained in the "Offense Conduct" section of the PSIR. This information was harvested from the law enforcement reports. Mr. Spotted Bear has never admitted or acknowledged most of these allegations and affirmatively denies some of the accusations. This enhancement should not be applied to Mr. Spotted Bear's offense level and the Total Offense Level should remain at **31** as anticipated in the plea agreement.

## 2. Criminal History Score

The parties anticipated Mr. Spotted Bear would be in Criminal History Category I. However, the PSIR assigned Mr. Spotted Bear **5** criminal history points for three driving under suspension convictions he received in western North Dakota from 2009-2011. In 2009 Mr. Spotted Bear pled guilty, pro se, to a driving under suspension charge in Dunn County, North Dakota. He was sentenced to two years of unsupervised probation resulting in **1** criminal history point. In 2010 and 2011 he pled guilty, again pro se, to two driving under suspension charges in McKenzie, County, North Dakota. He was sentenced to more than thirty days jail on both cases resulting in **2** criminal history points from each conviction.

Under U.S.S.G. §4A1.3(b)(1) "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or likelihood that the defendant will commit other crimes, a downward departure may be warranted." "In such a case, 'the court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category . . .

and therefore consider a downward departure from the guidelines.'" United States v. Swan, 327 F. Supp. 2d 1068, 1074, (D. Neb. 2004) (internal citations omitted). "In departing downward, the court can consider the historical facts of a defendant's criminal career, including his age when he committed the offenses, the proximity in time of the convictions, and 'the state's assessment of the seriousness of [defendants] crimes as reflected by the state courts' handling of sentencing.'" Id. (quoting United States v. Senior, 935 F.2d 149 (8th Cir. 1991). "In departing, the court should apply the guideline range that would have applied absent the overstatement of his criminal history." Id.

Generally, driving under suspension convictions do not count towards a defendant's criminal history. U.S.S.G. §4A1.2(c)(1). However, the offenses would count if the defendant was placed on probation for more than 1 year or received more than 30 days jail. Id. In North Dakota, driving under suspension convictions rarely result in more than a few days jail, if any, and almost never result in more than 360 days probation. The only explanation the undersigned can provide for the abnormal sentences Mr. Spotted Bear received is he was pro se and all three convictions occurred in oil country during the oil boom. At the time, these counties were having problems with unlicensed out-of-state drivers.

Mr. Spotted Bear should have requested an attorney. It was common practice at the time for driving under suspension charges to be reduced or dismissed entirely if the driver reinstated his driving privileges. This is because each conviction resulted in an extension of the suspension period and public policy favored drivers obtaining a valid license. The North Dakota legislature codified this practice in 2013 by adding the following sentence to North Dakota's driving under suspension statute: "[a] court may dismiss a charge under this section upon motion by the defendant if the defendant's operator's license is reinstated within sixty days of the date of the offense…" N.D.C.C. 39-06-42; S.L. 2013, ch. 292 § 2. Had this statutory mechanism been in place only a few years prior, Mr. Spotted Bear likely would have gotten one or all his driving under suspension cases reduced or dismissed and he would have no criminal history points. Additionally, these offenses occurred over a decade ago. They are almost beyond the ten-year period for counting prior offenses found in U.S.S.G. §4A1.2(e)(2).

Placing Mr. Spotted Bear into Criminal History Category III for three driving under suspension convictions that occurred over a decade ago substantially over-represents the seriousness of his criminal history or likelihood he will commit other crimes. Driving under

suspension convictions rarely count towards a person's criminal history. Mr. Spotted Bear's convictions only count because of the abnormal sentences he received based on the offenses occurring in western North Dakota during the oil boom. Had he requested a lawyer he likely could have gotten the charges reduced or dismissed. Only a few years later, the North Dakota legislature created a statutory mechanism that would have resulted in the cases being dismissed. The offenses occurred over a decade ago and are nearly excluded based on their age. Since 2011 Mr. Spotted Bear has no offenses resulting in criminal history points. Criminal History Category III substantially over-represents the seriousness of Mr. Spotted Bear's criminal history or likelihood he will re-offend. His criminal history is more like those individuals found in Criminal History Category I. Mr. Spotted Bear requests a downward departure to Criminal History Category I under U.S.S.G. §4A1.3(b)(1).

### 3. Guideline Range

Mr. Spotted Bear requests the Court find the Total Offense Level in his matter is **31** and the appropriate Criminal History Category is Category I. This would result in an advisory sentence of **108-135** months under the United States Sentencing Guidelines which is what the parties anticipated in the plea agreement.

### 4. Variance

Here, both the United States and Mr. Spotted Bear are moving for a downward variance. The United States submitted a well written and reasoned sentencing memorandum. In its sentencing memorandum the United States acknowledged it did not include the **2**-level enhancement under U.S.S.G. §2A3.1(b)(3)(A) or **5**-level enhancement under U.S.S.G. §4B1.5(b)(1) in its plea offer and requested a downward variance to 108 months "to prevent unfair surprise to the defendant, to promote confidence in the plea negotiation, and to provide fairness to the defendant." In its sentencing memorandum the United States articulated its position why a sentence of 108 months is the appropriate sentence under 18 U.S.C. §3553(a).

Mr. Spotted Bear also requests a downward variance. The Sentencing Guidelines are no longer mandatory following United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). "Booker provides district courts the flexibility to tailor individual sentences for each defendant against the framework of the congressionally-approved Guidelines scheme." United States v. Spears, 469 F.3d 1166, 1176 (8th Cir. 2006)(citing Booker, 543 U.S. at 264-65). "[T]he Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are

4

'reasonable.'" Gall v. United States, 552 U.S. 38, 46, 128 S. Ct. 586 (2007). A sentence outside the Guidelines does not require extraordinary circumstances or the use of a rigid mathematical formula. Id at 552 U.S. 47. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should… consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party." Id at 552 U.S. 49-50. "In so doing, he may not presume that the Guidelines range is reasonable." Id. "Under 18 U.S.C. §3553(a), a sentencing court 'shall impose a sentence sufficient, but not greater than necessary' to comply with sentencing goals, considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." United States v. Pappas, 452 F.3d 767, 773 (8th Cir. 2006). "[A] district court has 'wide latitude' to weigh factors, and it 'may give some factors less weight than a [party] prefers or more weight to other factors…'" United States v. Davis, 20 F.4th 1217, 1220 (8th Cir. 2021)(quoting United States v. Brown, 992 F.3d 665, 635-74 (8th Cir. 2021)). It will be an unusual case when "…a district court sentence-whether within, above, or below the applicable Guidelines range" will be reversed as substantively unreasonable. Davis, 20 F.4th at 1220 (quoting United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009)).

  Mr. Spotted Bear's childhood was less than ideal. As stated in the PSIR his childhood was a "rollercoaster." His parents struggled with alcoholism and there was domestic violence in the home. During his presentence interview he recalled having to hide behind a mattress with his siblings in the basement while his parents fought. There was "partying" in the home and "he witnessed a lot a kid should not" such as adults having sexual intercourse. In his own words, his childhood was "riddled with moments of trauma." Eventually, social services stepped in and removed Mr. Spotted Bear and his siblings from the home. The children were split up and Mr. Spotted Bear tried to help his siblings. Foster care was difficult for Mr. Spotted Bear. He was bullied because of a speech impediment and suffered deep emotional damage. While he does not discuss it, he was sexually abused as a child.

  Mr. Spotted Bear did his best to overcome his childhood. He moved to St. Cloud, Minnesota, to live with a relative and finish high school. He did well and graduated from St. Cloud Technical Senior High School in 2002. He attended St. Cloud State University but returned to North Dakota when his girlfriend at the time became pregnant. From 2006 to 2015 he worked in the oil fields to support his family. He married his wife in 2013 and they have two children who

are currently eleven and six years old. In 2015 he became employed as the Public Works Director for the Three Affiliated Tribes. He directly supervised six administrative staff and over eighty field technicians. His department was responsible for water and waste management for the entire reservation. He was a well-respected person who, as evidenced by the support letters submitted on his behalf, would do anything for friends or family.

  The United States and Mr. Spotted Bear both agree a downward variance is appropriate in this case. The United States has asked for a downward variance to a sentence of 108 months. Mr. Spotted Bear requests a further variance and believes the factors under 18 U.S.C. 3553(a) support a sentence of 48 months followed by a lengthy term of supervised release. Under this statute "[t]he court shall impose a sentence sufficient, *but not greater than necessary*, to comply…" with the goals of sentencing. (emphasis added). "…[I]n determining the particular sentence to be imposed, [the Court] shall consider the nature and circumstances of the offense and the history and characteristic of the defendant." 18 U.S.C. 3553(a)(1). Mr. Spotted Bear has young children. As stated in the PSIR, he became teary eyed several times during his interview about losing his family and the pain his actions have caused. Four years separated from family and friends and stripped of virtually all comforts and freedoms is consequential. This is especially true for someone like Mr. Spotted Bear who has minimal prior involvement with the criminal justice system. A sentence of 48 months is sufficient "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment…" in this case. 18 U.S.C. 3553(a)(2)(A).

  Another factor to be considered is the need for the sentence "…to afford adequate deterrence to criminal conduct" and "…to protect the public from further crimes from the defendant." 18 U.S.C. 3553(a)(2)(B); 18 U.S.C. 3553(a)(2)(C). Mr. Spotted Bear has minimal criminal history. His last offenses resulting in criminal history points occurred over a decade ago. He does not have any drug or alcohol issues. Prior to being charged he took it upon himself to receive counseling services through NDSU. He has been on pretrial release for over one year with strict supervision conditions. He has had only one minor violation for not getting his location pre-approved. Otherwise, he has been compliant with his conditions of release. According to the Release Status Reports his pretrial service officer believes he would be a candidate for continued pretrial release and self-reporting which is unfortunately not allowed in this case. Following release he would be subject to a lengthy period of supervision and would be required to register as a sexual offender for a minimum of 15 years in North Dakota. A sentence of 48 months with a

lengthy term of supervised release is sufficient to deter further criminal conduct and protect the public.

The Court should also consider the need for the sentence imposed "to provide the defendant with needed…correctional treatment in the most effective manner." Mr. Spotted Bear does not have issues with drugs or alcohol but would volunteer for sex offender treatment while incarcerated. The Bureau of Prisons provides two levels of sex offender treatment. The Residential Sex Offender Treatment Program involves high intensity programming for a period of 12 to 18 months. The Non-residential Sex Offender Treatment Program is completed within 9-12 months. A sentence of 48 months would be sufficient for Mr. Spotted Bear to complete the needed correctional treatment through the Bureau of Prisons.

Finally, defendants in North Dakota should be given similar sentences for similar conduct. The undersigned is aware of two cases where defendants received lesser sentences for essentially the same conduct alleged against Mr. Spotted Bear. In <u>United States v. Yellow Wolf</u>, 4:14-cr-022 the defendant was sentenced to 30 months in the Federal Bureau of Prisons. In United <u>States v. Smith</u>, 1:18-cr-218 the defendant was sentenced to 36 months in the Federal Bureau of Prisons). Mr. Spotted Bear should not be treated substantially different for similar conduct. A downward variance to a sentence of 48 months followed by significant probation is the appropriate sentence in this case.

Dated December 29, 2022.

/s/ *Jackson J. Lofgren*

Jackson J. Lofgren (ND ID # 06310)
Attorney for Justin Ladd Spotted Bear
120 N. 3rd St., Suite 225
P.O. Box 2393
Bismarck, ND 58502
(701) 223-3874
lawfirm@suhrandlofgren.com